UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis SHAW, Defendant–Appellant.

No. 93–2140.

United States Court of Appeals,
Seventh Circuit.

Submitted May 25, 1994.

Decided June 7, 1994.

Brenda Atkinson, Asst. U.S. Atty., (submitted), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Barry D. Sheppard, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dennis Shaw reentered the United States after having been deported following his conviction of possessing cocaine with intent to distribute that drug. Unauthorized reentry after deportation violates 8 U.S.C. § 1326, and Shaw was convicted of that crime. The nature of the prior felony led to a 16–level enhancement in Shaw's offense level under U.S.S.G. § 2L1.2(b)(2), producing a sentence of 46 months' imprisonment. Shaw believes that this sentence violates the double jeopardy and due process clauses of the fifth amendment to the Constitution.

Although Shaw did not present the double jeopardy claim to the district judge, waiving it, he remains free to contend that the use of the prior conviction to enhance

another sentence is plain error. We concluded, however, that it is not error of any kind, and therefore is not plain error. Recidivist sentencing has been part of the criminal justice system since the founding of the nation, and it has been sustained against all manner of double jeopardy claims. E.g., *Oyler v. Boles*, 368 U.S. 448, 451, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962); *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); *United States v. Alvarez*, 914 F.2d 915, 920 (7th Cir.1990). The essential point is simple: a sentence enhanced by reference to a prior conviction is not a "second punishment" for the first crime. It is a punishment for the new crime, tailored to the offender's circumstances in light of knowledge that higher penalties are needed to deter persons who have not responded to lesser sanctions. Shaw's observation that the sentence depends in part on the evidence that led to his prior conviction is irrelevant after *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

■ Before his deportation in July 1992, Shaw received INS Form I–294, warning him that reentry is forbidden and punishable by up to two years in prison. The two-year maximum term appears in § 1326(a), which deals with ordinary reentry after deportation. Subsection (b) adds that "[n]otwithstanding subsection (a) of this section" an alien who reenters after being deported for commission of a felony may be sentenced to five years in prison, and if the felony was "aggravated" the sentence may be as long as 15 years. Form I–294 did not warn departing aliens about § 1326(b), and Shaw believes that any penalty exceeding two years therefore violates the due process clause.

Shaw relies on cases such as *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973), in which the Executive Branch said that a proposed course of conduct would not violate the law and later instituted a criminal prosecution. Yet no one at the INS told Shaw that he was free to reenter; to the contrary, Form I–294 warned him that unauthorized reentry is a felony. He came back anyway, and he does not contend that in deciding to flout the law he relied on a belief that the maximum penalty is two years. Lack of detrimental reliance dooms his argument under the due process clause. *United States v. Smith*, 14 F.3d 662, 665–66 (1st Cir.1994); *United States v. Perez–Torres*, 15 F.3d 403 (5th Cir.1994); *United States v. Arzate–Nunez*, 18 F.3d 730, 737 (9th Cir. 1994); cf. *United States v. Crawford*, 18 F.3d 1173 (4th Cir.1994). Even a claim along the lines of "I was willing to risk a 24–month penalty but not a 46–month penalty" has little to recommend it. Some statutes require proof that the defendant knew that his conduct violated the law. E.g., *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). By and large, however, cognizance of legal consequences is unnecessary. It is enough to know the essential facts that constitute the crime, even though the actor may have no idea that these deeds are unlawful. E.g., *Staples v. United States*, —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *Posters 'N' Things, Ltd. v. United States*, —— U.S. ——, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994). No statute of which we are aware—certainly not § 1326— makes the sanction depend on the actor's knowledge of the penalty he faces. Under the ex post facto clause Congress may not increase the penalty after the acts constituting the offense; in that sense one may "rely" on the maximum penalty when deciding whether to commit an offense. But the ex post facto clause does not depend on what the actor knew; it operates even if the actor wrongly believed that the penalty was much greater than the statute actually provided. So, too, a belief that the penalty is smaller than the statute actually provides does not set a cap on the sanction.

■ Recasting the argument as a contention that the United States is "equitably estopped" to enforce § 1326(b) does not assist Shaw. Although the Supreme Court has not foreclosed the possibility of estoppel under exceptional circumstances, see *OPM v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42

(1984); it has insisted that errors by the Executive Branch cannot prevent application of the law unless the person asserting estoppel establishes all of the requirements of this doctrine at common law—including a detrimental change of position in reasonable reliance on the erroneous advice. *Community Health Services,* 467 U.S. at 61, 104 S.Ct. at 2224. Shaw does not contend that he relied, to his detriment, on the advice in I–294, and we therefore need not pursue the question whether, and if so how far, equitable estoppel can prevent enforcement of the penalty provisions in criminal statutes.

AFFIRMED.